**Carol MCLEOD, Plaintiff,**

v.

**UNITED PRESIDENTIAL LIFE INSURANCE COMPANY, Defendant.**

**No. Civ.A. 1:99–CV–637–CAP.**

United States District Court,
N.D. Georgia,
Atlanta Division.

July 13, 2000.

Howard L. Stopeck, Office of Howard L. Stopeck, Atlanta, GA, for Plaintiff.

William Bruce Barrickman, Julie M. Pomerantz, Barrick Allred & Young, Atlanta, GA, for Defendant.

## ORDER

PANNELL, District Judge.

The plaintiff filed the instant breach of contract action, alleging that the defendant failed to pay him the proceeds of a life insurance policy, under which he is the beneficiary. This matter is currently before court on the plaintiff's motion for summary judgment and the defendant's cross-motion for summary judgment.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On February 14, 1998, the defendant issued a life insurance policy to the decedent, Jason McLeod (the "decedent").[1] The insurance application included question 2.B, "Been convicted of 2 or more moving traffic violation(s) or driving under the influence in the past 3 years." The decedent checked the "no" box (the "representation"), and signed the application, naming his father, the plaintiff, as his beneficiary. The decedent paid all premium payments through the date of his death.

On April 2, 1998, the decedent was struck and killed by a truck while he was running away on foot from law enforcement officers. Thereafter, the plaintiff filed a claim for life insurance benefits with the defendant. On June 8, 1998, the defendant denied the plaintiff's claim, contending that the decedent's representation was false, and that his two convictions in Georgia for driving while his license was canceled, revoked or suspended voided the insurance policy. The undisputed record[2] demonstrates that the decedent had the following traffic history (by date of conviction or suspension):

(1) November 20, 1996—Georgia—Driving a Motor Vehicle on a Suspended License—[Doc. No. 9–1 and 16–1]

(2) February 3, 1997—Georgia—Driving a Motor Vehicle on a Suspended License—[Doc. No. 9–1 and 16–1];

1. During oral argument, the parties referred to statements that John Stevenson, the defendant's insurance agent, may or may not have said to the decedent when he helped him complete his insurance application. The court notes that while Mr. Stevenson most likely aided the decedent in completing the life insurance application, he is not a captive agent for the defendant, and, the insurance application expressly states that an agent cannot change/alter the terms of the application or contract. Because Mr. Stevenson had limited authority, his statements, if any, cannot be attributed to the defendant.

2. The decedent had numerous other convictions, however, his most relevant traffic and criminal history is recited in this order.

(3) February 3, 1997—Georgia—Expired license plate—[Doc. No. 16–1];

(4) February 3, 1997—Georgia—Driving on an Out of State License—[Doc. No. 16–1];

(5) October 27, 1997—Florida—Operating a Motor Vehicle without Insurance and an Expired Tag [Doc. No. 9–1];

(6) October 27, 1997—Florida—Suspended License for Failure to Pay Traffic Fine [Doc. No. 9–1].

The Florida convictions led to the indefinite suspension of the decedent's license. The decedent was given twelve (12) months probation for the February 3, 1997 convictions, but failed to report to his probation officer and pay all his fines and fees. A warrant for the decedent's arrest was issued in March of 1997. In addition to these convictions the defendant, on November 14, 1997, was charged by Georgia of:

(1) giving a false name to a law enforcement officer;

(2) giving a false date of birth to a law enforcement officer;

(3) driving a motor vehicle without a driver's license; and

(4) disobedience of a traffic control device.

A bench warrant for the decedent's arrest was issued on December 8 1997 for his failure to appear at his arraignment. On May 6, 1998, those charges were dropped due to the decedent's death.

■ The defendant contends that because the decedent misrepresented his driving record, the life insurance policy is invalid pursuant to O.C.G.A. § 33–24–7. Conversely, the plaintiff argues that the decedent's convictions were not "moving violations" under Georgia and/or Florida law. Accordingly, the plaintiff argues that the decedent did not misrepresent his driving record and truthfully answered the question posed by the insurance application. Thus, the plaintiff argues that he is entitled to the life insurance proceeds.

## II.  LEGAL DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 156, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Bingham, Ltd. v. United States,* 724 F.2d 921, 924 (11th Cir.1984). The moving party's burden is discharged merely by " 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *See Bradbury v. Wainwright,* 718 F.2d 1538, 1543 (11th Cir.1983). Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In deciding a motion for summary judgment, it is not the court's function to de-

cide genuine issues of material fact but to decide only whether there is such an issue to be tried. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The applicable substantive law will identify those facts that are material. *See Anderson*, 477 U.S. at 247, 106 S.Ct. at 2510. Facts that in good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. *See id.*

Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* In order for factual issues to be "genuine" they must have a real basis in the record. *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. "When the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (citations omitted).

■ Initially, the court notes that there is no allegation nor does the evidence indicate that the decedent was unable to read or that the agent prevented him from reading the application. Regardless, one who signs a written document without reading it, unless prevented from doing so by some fraud or artifice is chargeable with knowledge of its contents. *See Musgrove v. Musgrove*, 213 Ga. 610, 612(3), 100 S.E.2d 577 (1957). There has been no allegation that the defendant incorrectly noted the decedent's responses to the application queries. Accordingly, the decedent is chargeable with the knowledge that the application required a truthful response as to whether he had received a moving traffic violation during the last three years. *See cf. Browning v. Davis*, 167 Ga.App. 393, 306 S.E.2d 40 (1983) (denying summary judgment where issue of fact existed over what the insured told the insurer when completing the application).

■ In cases where the application for insurance, as here, is attached to and becomes a part of the policy, in order to disavow the policy due to the applicant's misrepresentation on the application, the insurer need only show that the representation was false and that it was material in that it changed the nature, extent, or character of the risk. *See United Family Life Insurance Co. v. Shirley*, 242 Ga. 235, 248 S.E.2d 635 (1978); *Bourne v. Balboa Insurance Co.*, 144 Ga.App. 55, 56–7, 240 S.E.2d 261, 263 (1977); O.C.G.A. § 33–24–7. Even if the applicant may have acted in good faith, not knowing that the representation was untrue, the insurer's burden remains the same. *See id.; All American Life, etc., Co. v. Saunders*, 125 Ga.App. 7, 10, 186 S.E.2d 328 (1971). "A material representation is one that would influence a prudent insurer in determining whether or not to accept the risk, or in fixing the amount of the premium in the event of such acceptance." *Bourne*, 144 Ga.App. at 57, 240 S.E.2d at 263 (citing *Lee v. Metropolitan Life Ins. Co.*, 158 Ga. 517(2), 123 S.E. 737 (1924)). To this end, the suspension of a drivers license is a matter that must be reported in response to a question on an application seeking such information. *See Anderson v. Allstate Ins. Co.*, 121 Ga. App. 582(1), 174 S.E.2d 591 (1970) (discussing applications requesting information on suspended licenses). Further, it is uncontested that the defendant's chief underwriter, Jay Wolfmeier, based upon the decedent's two convictions for driving with a suspended license, "would have been assessed a flat extra rating of $7.00 per $1,000 of coverage per year. Thus, on a $100,000 life insurance policy, he would have been charged an additional flat extra rating of $700 of premium per year." Wolfmeier Aff. at 2.

■ Moving traffic violations are not expressly defined by Georgia law. *See* O.C.G.A. § 40–5–57. The defendant, however, has established that it would not have issued the policy or at the very least increased the premium payments if it had known that the decedent had been convicted at least twice of driving while his license was suspended. *See Bridges v. World Service Life Ins. Co.*, 134 Ga.App. 923, 216 S.E.2d 714 (1975). The court recognizes that ordinarily the question of materiality of misrepresentations rests within the sound province of the jury, however, where the evidence excludes every other reasonable inference except that they were material, no issue is presented on that point for consideration. *See All American Life, etc., Co.*, 125 Ga.App. at 7, 186 S.E.2d 328.

The decedent was plainly asked whether he had been convicted of a "moving traffic violation." Although he had been convicted twice for operating a motor vehicle while his license was suspended, he did not report those convictions on his application. *See* O.C.G.A. § 40–5–121. The plaintiff exhaustively argues that these convictions were administrative in nature and not "moving" violations by intertwining a discongruant collection of Georgia laws with no plain or implicit application to the question at bar. Simply, regardless of whether his convictions were for "operating" or "moving" a motor vehicle illegally, the court is unpersuaded by the plaintiff's argument and finds that the plain meaning of a conviction of driving on a suspended license is a "moving traffic violation." *See* O.C.G.A. § 40–5–121. Therefore, having carefully considered the facts presented and the parties' arguments, the court holds that the evidence presented in the instant matter excludes every other reasonable inference except that the decedent's misrepresentation was material. Thus, on the basis of the information in the record, the court concludes that it is manifest that the negative answer on the application is chargeable to the decedent, that it was false, and that it pertained to a material matter. *See* O.C.G.A. § 33–24–7.

■ The plaintiffs also seek to recover attorneys fees under O.C.G.A. § 33–4–6, which allows recovery of penalties from an insurance company when it fails to pay a covered loss within sixty (60) days after a demand for payment has been made and there has been a finding that the refusal to pay was in bad faith. The purpose of the section is to penalize insurers that delay payments without good cause. *See Georgia Intl. Life. Ins. Co. v. Harden*, 158 Ga.App. 450, 280 S.E.2d 863 (1981). As the section imposes a penalty, it is strictly construed. *See Progressive Cas. Ins. Co. v. Avery*, 165 Ga.App. 703, 302 S.E.2d 605 (1983). Because the court has found that the defendant correctly denied payment to the plaintiffs and Section 33–4–6 only provides recovery for failure to pay a loss covered by the Policy, there can be no bad faith recovery under that section. Accordingly, the defendant is entitled to summary judgment.

### III.   CONCLUSION

For the foregoing reasons, the court hereby GRANTS the plaintiff's motion to file late mandatory interrogatories [Doc. No. 6–1], DENIES the plaintiff's motion for summary judgment [Doc. No. 10–1], and GRANTS the defendant's motion for summary judgment [Doc. No. 12–1].